## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROZALIYA RIPA, individually and on behalf of all others similarly situated, | Case No: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| UNILEVER UNITED STATES, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Dated: December 3, 2025

**BLOOD HURST & O'REARDON, LLP**
Timothy G. Blood (*pro hac vice forthcoming*)
Thomas J. O'Reardon II (*pro hac vice forthcoming*)
James M. Davis (*pro hac vice forthcoming*)
501 West Broadway, Suite 1490
San Diego, CA 92101
Telephone: (619) 338-1100
Facsimile:  (619) 338-1101
Email: tblood@bholaw.com
        toreardon@bholaw.com
        jdavis@bholaw.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: ykopel@bursor.com

*Attorneys for Plaintiff*

Plaintiff Rozaliya Ripa ("Plaintiff"), by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge, against Unilever United States Inc. ("Unilever" or "Defendant").

## NATURE OF THE ACTION

1.      Retinol is a vitamin A derivative widely used as an ingredient in cosmetic topical skin applications (creams, gels, serums) for its potential anti-aging properties. Retinol as an ingredient in cosmetic skincare is widely understood by the consuming public to have these properties and is purchased by consumers to achieve retinol's benefits: reducing the appearance of fine lines and wrinkles; fading dark spots on skin; preventing premature aging; and generally maintaining healthy skin. Retinol, however, takes time to work. It must undergo a complex biological conversion to its active form, retinoic acid, in the skin in order to impart these effects. To have any impact, retinol-containing products require long-term, consistent exposure to the skin that is repeated daily. Otherwise, these products confer none of retinol's benefits. While consumers widely understand the potential benefits associated with retinol, they are largely unaware of the biological processes required to achieve these benefits.

2.      Unilever exploits consumers' perception of the benefits of retinol and consumers' lack of knowledge about how retinol works by deceptively advertising and selling an array of Dove-brand retinol skin cleansers that purport to deliver the commonly understood dermatologic benefits of retinol—but are rinsed off right away, therefore minimizing its contact time with the target organ, in this case the skin. These cleansers are intended to be used like a face or body wash: applied and then washed off. However, washing off retinol moments after application means the retinol will not and cannot provide the advertised benefits. Further, retinol is a relatively unstable

chemical. Even if the retinol skin cleansers could provide the advertised benefits of retinol—which they cannot—retinol must be properly packaged, shipped, and stored, otherwise it loses its efficacy. Unilever does not properly package, ship or store the subject retinol products. As a result, by the time a consumer purchases the subject products, the retinol is no longer active. The retinol cleansers do not provide the skincare benefits associated with topically applied vitamin A.

3.    The retinol products at issue include: "Dove Calming Moisture Serum Body Wash with renewing Retinol" (the "Retinol Body Wash"); "Dove Body Love Night Recovery Body Cleanser" (the "Retinol Body Cleanser"); and "Dove Body Love Body Polish Night Recovery" (the "Retinol Body Polish") (collectively, the "Retinol Rinse-Off Cleansers").

4.    Unilever's advertising claims about the promised benefits of its Retinol Rinse-Off Cleansers are deceptive and misleading. The retinol in the Retinol Rinse-Off Cleansers do not work as advertised and does not provide the advertised benefits.

5.    Plaintiff seeks, among other relief, damages, restitution and injunctive relief on behalf of herself and classes defined as:

> All persons who purchased one or more Retinol Rinse-Off Cleansers within the United States, including its territories (the "Nationwide Class")

> All persons who purchased one or more Retinol Rinse-Off Cleansers in New York, California, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Missouri, Montana, Nebraska, New Hampshire, New Jersey, Ohio, Oregon, Rhode Island, South Carolina, Vermont, Washington, West Virginia, and Wisconsin, and all other states with materially similar statutes (the "Multi-State Consumer Protection Class")

> All persons who purchased one or more Retinol Rinse-Off Cleansers within the State of New York (the "New York Class")

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members and the aggregate amount in controversy exceeds

$5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.

7.    This Court has personal jurisdiction over Defendant because Defendant conducts business in New York. Defendant has marketed, advertised, distributed, and sold the Retinol Rinse-Off Cleansers in New York, rendering exercise of jurisdiction by New York courts permissible.

8.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff Ripa purchased the subject product in this District and Defendant does business throughout this District.

## PARTIES

9.    Plaintiff Rozaliya Ripa is a resident of the State of New York. While residing in New York, New York, Ripa was exposed to and saw the subject advertising message by reading the Retinol Body Wash labeling and packaging. In reliance on the advertising message that the Retinol Body Wash contained retinol and would confer the benefits of retinol, Ripa purchased the Retinol Body Wash, paying approximately $10 at CVS in New York, New York, in or around June 2025. By purchasing the deceptively advertised Retinol Body Wash, Ripa suffered injury-in-fact and lost money. The Retinol Body Wash does not provide the benefits of retinol. Had Ripa known the truth about Unilever's misrepresentations and omissions at the time of her purchase, Ripa would not have purchased the Retinol Body Wash or would have paid less for it.

10.    Defendant Unilever United States Inc. is a Delaware limited liability company with its principal place of business in Hoboken, New Jersey. Unilever sells a wide range of consumer goods, including food and beverages, personal care products, and beauty and wellness items through household brands such as Dove, Hellmann's, Vaseline, and Seventh Generation. Unilever

manufactures, advertises, markets, distributes and sells the Retinol Rinse-Off Cleansers.

## FACTUAL ALLEGATIONS

***Background on Retinoids, Including Tretinoin and Retinol***

11.     Retinol is a type of retinoid. Retinoids are a class of chemical compounds that are derivatives of vitamin A.

12.     In the human body, retinol is the primary form of vitamin A that circulates in the bloodstream, and retinoic acid is its most biologically active form. The vitamin is stored in the liver as retinyl esters, which can be converted back to retinol and released into the bloodstream when needed.

13.     The synthetic version of biologically active retinoic acid is known as tretinoin and is only available by prescription. Tretinoin binds to and activates specific retinoic acid (RAR) and retinoid-X (RXR) receptors inside skin cells.[1] This process can influence gene expression, protein production, and skin cell development.[2]

14.     The common side effects of tretinoin—such as dryness, peeling, redness, and itching (known as the "retinoid reaction")[3]—underscore its potency and the biological processes required for its activity. Evidence shows that tretinoin influences collagen synthesis, fibroblast activity, and the inhibition of matrix metalloproteinases—enzymes that break down proteins like collagen found in the spaces between cells.[4] Tretinoin is FDA-approved under various brand names[5] for treating facial acne and as an anti-aging treatment, underscoring its powerful effects and specific mechanisms of action.

---

[1]     Milosheska, et al., *Use of Retinoids in Topical Antiaging Treatments: A Focused Review of Clinical Evidence for Conventional and Nanoformulations*, Adv Ther. 2022 Dec;39(12):5351-5375.

[2]     *Id.*

[3]     *Id.*

[4]     *Id.*

[5]     Common brand names include Altreno, Atralin, Obagi, Retin-A, Tretin-X, and Ziana.

15.    Retinol derivatives, which are not classified as drugs, are commonly found in over-the-counter ("OTC") "cosmeceutical" products. Skincare companies selling OTC retinol products have long claimed that retinol has antiaging effects and improves skin texture, combats hyperpigmentation, reduces dryness, and lessens or eliminates fine lines in the skin. OTC retinols are commonly sold in creams, gels, lotions, ointments and serums.

16.    Unlike FDA-approved tretinoin, retinols—which are twenty times less potent than tretinoin[6]—require a series of complex enzymatic steps in the body, including oxidation and hydroxylation, to convert into active retinoic acid.[7] This intricate process underscores the biological hurdles involved in achieving any meaningful effect from retinol.



17.    This conversion process—essential for efficacy—requires time. RAR and RXR nuclear receptors, which are necessary for retinoic acid to work, are found primarily in keratinocytes—the living skin cells located in the deeper layers of the epidermis. The outermost layer of skin that body wash contacts, known as the stratum corneum, is made up of dead skin cells called corneocytes. Corneocytes lack nuclei and therefore do not have the receptors needed for retinoic acid to bind or function. This means that for retinol in a body or face wash to be effective it must be in contact with the skin long enough to penetrate beyond the stratum corneum to reach the living keratinocyte cells—a process that cannot occur during the brief time the Retinol Rinse-Off Cleanser has contact with the skin. That is, for topical retinol to have any chance of working,

---

[6]    Kang S, Duell EA, Fisher GJ, et al. *Application of retinol to human skin in vivo induces epidermal hyperplasia and cellular retinoid binding proteins characteristic of retinoic acid but without measurable retinoic acid levels or irritation*. J Invest Dermatol. 1995;105(4):549–556.
[7]    Riahi RR, et al. *Topical retinoids: therapeutic mechanisms in the treatment of photodamaged skin*. Am J Clin Dermatol. 2016;17(3): 265–76.

it must remain on the skin long enough to permeate the stratum corneum, reach the keratinocytes and undergo the conversion process to retinoic acid. Only then can the retinoic acid bind to the RAR and RXR nuclear receptors in the cell nucleus to regulate gene expression and produce its skin-improving effects.

18.    Even prescription tretinoin (synthetic active retinoic acid), which bypasses the complex conversion process of retinyl esters → retinol → retinaldehyde → retinoic acid, comes with specific application guidelines. Users are advised to "avoid washing the skin treated with tretinoin for at least 1 hour after applying it."[8]

19.    Retinol's instability further limits its effectiveness. Exposure to heat, light, and trace metals accelerates its decomposition,[9] and its efficacy can only be preserved under strict conditions: controlled atmospheric conditions, storage in aluminum tubes, and an environment below 68 degrees Fahrenheit. The Retinol Rinse-Off Cleanser is not shipped or stored on retail stores at the proper temperature and Defendant packages them in plastic containers, not aluminum.

***Unilever Falsely Markets the Retinol Rinse-Off Cleansers as Conferring the Skincare Benefits of Retinol***

20.    The Retinol Rinse-Off Cleansers are sold through various third-party retailers, including Rite Aid, CVS, Walmart, and Amazon, among others.

21.    As shown in the images below, Unilever prominently labels the Retinol Rinse-Off Cleansers with the word "Retinol," and lists retinol among the ingredients.

---

[8]    *See* FDA label for RENOVA® (tretinoin cream 0.05%), https://www.accessdata.fda.gov/drugsatfda_docs/label/2000/19963S5,7LBL.PDF

[9]    SCCS (Scientific Committee on Consumer Safety), revision of the scientific Opinion (SCCS/1576/16) on vitamin A (Retinol, Retinyl Acetate, Retinyl Palmitate), preliminary version of 10 December 2021, final version of 24-25 October 2022, SCCS/1639/21, https://health.ec.europa.eu/system/files/2023-08/sccs_o_261.pdf

*The Retinol Body Cleanser*





22.    "RETINOL SERUM" is prominently placed on the front of the Retinol Body Cleanser packaging. On the back of the Retinol Body Cleanser, Unilever claims: "Works with skin while you sleep to boost skin's resilience for a renewed skin moisture barrier," and, near "RETINOL SERUM," states, "encourages production of skin's natural moisturizers."

23.    "Retinol" is listed as an ingredient.

*The Retinol Body Wash*





24.     The Retinol Body Wash prominently features "retinol" on the front. On the back, Unilever states: "Wish you could wake up to renewed skin? Our advanced formula with a blend of active MicroMoisture + retinol and botanical oils works with skin while you sleep to boost resilience for a strengthened and renewed moisture barrier."

25.     "Retinol" is listed as an ingredient.

26.     Consistent with the product packaging, on Unilever's webpage for the Retinol Body Wash, Unilever states: "Renew skin overnight with our body wash with 3% renewing serum with

retinol, chamomile and calming warm oat milk aroma."[10] Unilever also features retinol as an ingredient, stating that it is "known to accelerate skin surface turnover."[11]

### *The Retinol Body Polish*



---

[10] https://www.dove.com/us/en/p/calming-moisture-serum-body-wash-with-renewing-retinol.html/00011111049437 (last visited November 6, 2025).

[11]        *Id.*





27.    "RETINOL SERUM" is featured prominently on the front of the Retinol Body

Polish. On the back and under "night recovery," Unilever states: "Smooths and refines dry, worn-down skin and infuses moisture for beautifully reset skin in the morning."

28.    "Retinol" is listed as an ingredient.

29.    The directions for use state: "In the shower, massage a generous amount on skin focusing on dry, worn-down skin. Leave on for one minute to infuse moisture. Follow with the Dove Body Love Body Cleanser to lock in moisture.

\* \* \*

30.    However, the Retinol Rinse-Off Cleansers cannot provide the skincare benefits associated with retinol. By design and according to the product's directions for use, the Retinol Rinse-Off Cleansers are washed off the skin with water soon after it is applied, preventing any meaningful interaction with the skin.

31.    As a result, there is insufficient contact time with the skin for any retinol that may be in the Retinol Rinse-Off Cleansers to penetrate the stratum corneum and undergo the biological conversion process from retinyl esters to retinoic acid. At most, any retinol would only contact the corneocytes, the dead skin cells that lack the RAR and RXR nuclear receptors necessary for retinoic acid to bind and function.

32.    Further, to be effective, retinol application must be frequently repeated and left on the skin. The effects of properly applied retinol take weeks—if not months. Even when retinol is properly applied and left on the skin for 24 hours—far longer than the time even topical retinol is typically left on skin—very little retinol permeates the stratum corneum to reach keratinocytes.[12] Rinsing off retinol from the skin simply washes it off, and does not allow it to remain on the skin for a prolonged time period.[13]

---

[12]    *Supra*, n. 9.
[13]    *Supra*, n. 9.

33.    The prices of the Retinol Rinse-Off Cleansers are higher because they are marketed as providing the benefits of retinol. For instance, the Retinol Body Wash sells at a popular retailer for approximately 54 cents per ounce, while a non-retinol "Dove Deep Moisture" body wash is sold at approximately 36 cents per ounce.[14] However, because all potentially active retinol (if there is any) in the Retinol Rinse-Off Cleansers is washed away, they do not provide the advertised benefits. Further, because of product container, storage and shipping requirements that are not followed, the Retinol Rinse-Off Cleansers do not provide the advertised benefits.

## CLASS ACTION ALLEGATIONS

34.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

35.    Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definitions may depend on the information obtained through discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following Nationwide Class:

> All persons who purchased one or more Retinol Rinse-Off Cleansers within the United States, including its territories.

36.    Plaintiff also brings this action and seeks certification of the following Multi-State Consumer Protection Class comprised of states' consumer protection statutes that do not require reliance or scienter:

> All persons who purchased one or more Retinol Rinse-Off cleansers in New York, California, Connecticut, Delaware, District of

---

[14]    *Compare* https://www.walmart.com/ip/Dove-Calming-Moisture-Body-Wash-for-Women-3-Renewing-Serum-with-Retinol-Chamomile-18-5-oz/13550653443?classType=VARIANT&from=/search (last visited November 6, 2025) *with* https://www.walmart.com/ip/Dove-Body-Wash-for-Women-Nourishing-Deep-Moisture-Cleanser-All-Skin-30-6-oz-with-Pump/38260427?athpid=38260427&athpgid=AthenaBrandPage&athcgid=null&athznid=ProductTileCollection_6b5d0331-20e9-3234-9490-9aa0543c244d_items&athieid=v0&athstid=CS020&athguid=3OhDN6SejETdrpRw5itDFTVxtxwbauR65Fxd&athancid=null&athena=true&athbdg=L1600 (last visited November 6, 2025).

Columbia, Florida, Hawaii, Idaho, Illinois, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Missouri, Montana, Nebraska, New Hampshire, New Jersey, Ohio, Oregon, Rhode Island, South Carolina, Vermont, Washington, West Virginia, and Wisconsin, and all other states with materially similar statutes.

37.     Plaintiff also brings this action and seeks certification of the following New York Class:

All persons who purchased one or more Retinol Rinse-Off Cleansers within the State of New York.

38.     Excluded from each Class are the Defendant, its parents, subsidiaries, affiliates, officers, and directors; those who purchased Retinol Rinse-Off Cleansers for the purpose of resale; all persons who make a timely election to be excluded from the Classes; the judge to whom this case is assigned and any immediate family members thereof.

39.     The number of Class members is so numerous that the joinder of individual Class members is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors, among other methods.

40.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

(a)     What advertising message is conveyed by the product packaging and reinforced by other marketing and advertising;

(b)     Whether the advertising claim conveyed by the product packaging and reinforced by other marketing and advertising is deceptive;

(c)     Whether the Retinol Rinse-Off Cleansers confer the advertised retinol skincare benefits;

(d)     Whether Plaintiff and Class members were damaged by Unilever's conduct or entitled to restitution and the amount of damages or restitution; and

(e)     Whether Plaintiff and Class members are entitled to injunctive relief.

41.     The claims of the named Plaintiff are typical of the claims of the Classes because Plaintiff has the same claims and was exposed to the same advertising message about the Retinol Rinse-Off Cleansers, purchased a Retinol Rinse-Off Cleanser, and suffered a loss as a result of that purchase.

42.     Plaintiff is an adequate class representative because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

43.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Individual litigation is not economically feasible given the complex and relatively costly litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. Individualized litigation also presents the potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties, levels the playing field between litigants, is economically feasible and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I

**Deceptive Acts or Practices, New York Gen. Bus. Law § 349, and Materially Similar State Statutes On Behalf of the Multi-State Consumer Protection Class**

44.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

45.    This Count is brought individually and on behalf of the Multi-State Consumer Protection Class ("Class" for purposes of this Count).

46.    The foregoing acts, conduct and omission of Defendant constitute unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of at least the following state consumer protection statutes:

(a)    New York N.Y Gen. Bus. Law §§ 349, 350

(b)    California Bus. & Prof. Code § 17200, *et seq*.

(c)    California Civil Code § 1750, *et seq*.

(d)    Connecticut Conn. Gen. Stat. §§ 42-110a through 42-110q

(e)    Delaware Del. Code Ann. Title 6, §§ 2511 through 2527, §§ 2580 through  2584

(f)    District of Columbia D.C. Code §§ 28-3901 through 3913

(g)    Florida Fla. Stat. §§ 501.201 through 501.213

(h)    Hawaii Haw. Rev. Stat. §§ 480-1 through 480-24

(i)    Idaho Code Ann. §§ 48-601 through 48-619

(j)    Illinois 815 Ill. Comp. Stat. 505/1 through 505/12

(k)    Kansas Kan. Stat. Ann. §§ 50-623 through 50-640, and §§ 50-675(a) through 50-679(a)

(l)    Kentucky Ky. Rev. Stat. Ann. §§ 367.110 through 367.990

(m)    Louisiana La. Rev. Stat. Ann. §§ 51:1401 through 51:1420

(n)     Maine Me. Rev. Stat. Ann. tit. 5, §§ 205A through 214

(o)     Massachusetts Mass. Gen. Laws Ann. Ch. 93A, §§ 1 through 11

(p)     Missouri Mo. Rev. Stat. §§ 407.010 through 407.307

(q)     Montana Mont. Code Ann. §§ 30-14-101 through 30-14-157

(r)     Nebraska Neb. Rev. Stat. §§ 59-1601 through 59-1623

(s)     New Hampshire N.H. Rev. Stat. Ann. §§ 358-A:1 through 358-A:13

(t)     New Jersey N.J. Stat. Ann. §§ 56:8-1 through 56:8-91

(u)     Ohio Rev. Code Ann. §§ 1345.01 through 1345.13

(v)     Oregon Or. Rev. Stat. §§ 646.605 through 646.656

(w)     Rhode Island R.I. Gen. Laws §§ 6-13.1-1 through 6-13.1-27

(x)     South Carolina S.C. Code Ann. §§ 39-5-10 through 39-5-160

(y)     Vermont Vt. Stat. Ann. tit. 9, §§ 2451 through 2480(g)

(z)     Washington Wash. Rev. Code §§ 19.86.010 through 19.86.920

(aa)    West Virginia W. Va. Code §§ 46A-6-101 through 46A-6-110

(bb)    Wisconsin Wis. Stat. § 100.18, §§ 100.20 through 100.264

47.     GBL § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring . . . an action to recover his actual damages or fifty dollars, whichever is greater."

48.     GBL § 349(h) further provides that "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section," and that "[t]he court may award reasonable attorney's fees to a prevailing Plaintiffs."

49.     Defendant's manufacture, distribution, marketing, advertising, labeling, and sale of the Retinol Rinse-Off Cleansers constitute "business, trade or commerce" under GBL § 349(a).

50.    Defendant's conduct violates GBL § 349 because Defendant engaged in the deceptive acts and practices described above.

51.    Defendant's deceptive conduct and its false and misleading advertising regarding the Retinol Rinse-Off Cleansers, including advertising the Retinol Rinse-Off Cleansers as delivering the benefits of retinol, are facts that a reasonable person would have considered material in deciding whether or not to purchase (or how much they were willing to pay to purchase) the Retinol Rinse-Off Cleansers.

52.    Defendant's acts and practices described above were likely to mislead a reasonable consumer acting reasonably under the circumstances, including Plaintiff and members of the Class.

53.    Defendant's materially misleading statements and deceptive acts and practices were directed at the public at large, including Plaintiff and members of the Class.

54.    Had Defendant disclosed all material information regarding the Retinol Rinse-Off Cleansers to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased the Retinol Rinse-Off Cleansers or would have paid less.

55.    Defendant's deceptive acts and practices, and/or misrepresentations and omissions, have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

56.    Defendant's actions impact the public interest because Plaintiff and the members of the Class have been injured in exactly the same way as thousands of other consumers by Defendant's deceptive acts and practices as described herein.

57.    As a direct and proximate result of Defendant's deceptive trade practices, Plaintiff and the other Class members have suffered an ascertainable loss and actual damages. Plaintiff and the other Class members would not have purchased the Retinol Rinse-Off Cleansers or would have

paid less for them had Defendant disclosed the truth about the Retinol Rinse-Off Cleansers.

58.    Defendant's violation of GBL § 349 was willful and knowing. Defendant knowingly and willfully marketed the Retinol Rinse-Off Cleansers as delivering the benefits of retinol while knowing they cannot.

59.    As a direct and proximate result of Defendant's conduct in violation of GBL § 349, Plaintiff and members of the Class have been injured in an amount to be proven at trial, with a statutory minimum of fifty dollars per Class member.

60.    Plaintiff also seeks injunctive relief as deemed appropriate by the Court.

61.    Additionally, pursuant to GBL § 349, Plaintiff and the Class seek attorneys' fees and costs.

62.    Prior to filing this complaint, Plaintiff served Defendant a letter providing pre-suit notice and a demand for corrective action concerning the Retinol Rinse-Off Cleansers at issue in this complaint.[15] The notice stated it was being sent pursuant to applicable state consumer statutes and that Defendant's conduct violated those state consumer statutes. The notice letter further stated that it was being sent on behalf of Plaintiff and all other Class members.

## <u>COUNT II</u>
### Deceptive Acts or Practices, New York Gen. Bus. Law § 350, and Materially Similar State Statutes On Behalf of the Multi-State Consumer Protection Class

63.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

64.    This Count is brought individually and on behalf of the Multi-State Consumer Protection Class ("Class" for purposes of this Count).

65.    The foregoing acts, conducts, and omissions of Defendant constitute false

---

[15]    *See* Exhibit A.

advertising in violation of the same States' consumer protection statutes as set forth in Paragraph 43, above.

66.    The foregoing acts, conducts, and omissions of Defendant constitute false advertising in violation of GBL § 350.

67.    Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of GBL § 350.

68.    Defendant's manufacture, distribution, marketing, advertising, labeling, and sale of the Retinol Rinse-Off Cleansers constitute "business, trade or commerce" under GBL § 350.

69.    Defendant caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to the Defendant, to be untrue and misleading to consumers, including Plaintiff and Class members. Numerous examples of these advertisements appear in the preceding paragraphs throughout this Complaint.

70.    In the course of business, Defendant through its agents, employees, and/or subsidiaries, violated GBL § 350 by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the Retinol Rinse-Off Cleansers, as detailed above.

71.    Defendant's deceptive conduct and its false and misleading statements about the Retinol Rinse-Off Cleansers, including advertising the Retinol Rinse-Off Cleansers as delivering the benefits of retinol, are facts that a reasonable person would have considered material in deciding whether or not to purchase (or how much they were willing to pay to purchase) the Retinol Rinse-Off Cleansers.

72.     Defendant's acts and practices described above were likely to mislead a reasonable consumer acting reasonably under the circumstances, including Plaintiff and members of the Class.

73.     Defendant's materially misleading statements and deceptive acts and practices were directed at the public at large, including Plaintiff and members of the Class.

74.     Defendant's false advertising practices, including misrepresentations and omissions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class members, about Retinol Rinse-Off Cleansers.

75.     Had they known the truth, Plaintiff and Class members would not have purchased the Retinol Rinse-Off Cleansers or would have paid less for them.

76.     Defendant's deceptive acts and practices, and/or misrepresentations and omissions, have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

77.     Defendant's actions impact the public interest because Plaintiff and the members of the Class have been injured in exactly the same way as thousands of other consumers by Defendant's deceptive acts and practices as described herein.

78.     As a direct and proximate result of Defendant's deceptive trade practices, Plaintiff and the other Class members have suffered an ascertainable loss and actual damages. Plaintiff and the other Class members would not have purchased the Retinol Rinse-Off Cleansers or would have paid less for them had Defendant disclosed the truth about their inability to deliver the benefits of retinol.

79.     Defendant's violation of GBL § 350 was willful and knowing. Defendant knowingly and willfully advertised the Retinol Rinse-Off Cleansers as delivering the benefits of

retinol while knowing they cannot.

80.     Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading and/or otherwise learning the facts that Defendant had concealed or failed to disclose.

81.     Plaintiff and Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendant's misrepresentations and/or failure to disclose material information.

82.     As a direct and proximate result of Defendant's conduct in violation of GBL § 350, Plaintiff and members of the Class have been injured in an amount to be proven at trial.

83.     Pursuant to GBL § 350, Plaintiff and Class Members seek an order enjoining Defendant's false advertising practices and awarding damages and any other just and proper relief available under GBL § 350.

84.     Additionally, pursuant to GBL § 350, Plaintiff and the Class seek attorneys' fees and costs.

85.     Prior to filing this complaint, Plaintiff served Defendant a letter providing pre-suit notice and a demand for corrective action concerning the Retinol Rinse-Off Cleansers at issue in this complaint.[16] The notice stated it was being sent pursuant to applicable state consumer statutes and that Defendant's conduct violated those state consumer statutes. The notice letter further stated that it was being sent on behalf of Plaintiff and all other Class members.

## **COUNT III**
**Deceptive Acts or Practices, New York Gen. Bus. Law § 349**
**On Behalf of the New York Class**

86.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

---

[16]     *See* Exhibit A.

87.    Plaintiff brings this claim individually and on behalf members of the New York Class against Defendant.

88.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations on the packaging of the Retinol Rinse-Off Cleansers.

89.    The foregoing deceptive acts and practices were directed at consumers.

90.    The foregoing deceptive acts and practices are misleading in a material way as alleged herein.

91.    Plaintiff and members of the Class were injured as a result because (a) they would not have purchased the Retinol Rinse-Off Cleansers if they had known that the Retinol Rinse-Off Cleanser was ineffective at conferring the suggested skincare benefits of topical retinol, or (b) they overpaid for the Retinol Rinse-Off Cleansers on account of the alleged acts and omissions.

92.    On behalf of Plaintiff and Class members, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars for each Retinol Rinse-Off Cleanser purchase, whichever is greater, three times actual damages, punitive damages, reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under section 349 of the New York General Business Law.

## <u>COUNT IV</u>
### False Advertising, New York Gen. Bus. Law § 350
### On Behalf of the New York Class

93.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

94.    Plaintiff brings this claim individually and on behalf of members of the New York Class against Defendant.

95.    Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of section 350 of the New York General Business Law by engaging in the acts and omissions alleged.

96.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

97.     This misrepresentation has resulted in consumer injury or harm to the public interest.

98.     As a result of this misrepresentation, Plaintiff and members of the Class have suffered economic injury because (a) they would not have purchased the Retinol Rinse-Off Cleansers or paid less had they known that the Retinol Rinse-Off Cleansers were ineffective at conferring the suggested benefits of topical retinol, and (b) they overpaid for the Retinol Rinse-Off Cleansers on account of the misrepresentation that they are effective at conferring the suggested benefits of retinol.

99.     On behalf of herself and members of the Class, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars for each Retinol Rinse-Off Cleanser purchase, whichever is greater, three times actual damages, punitive damages, and reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under section 350 of the New York General Business Law.

**COUNT V**
**Unjust Enrichment**
**On Behalf of the Nationwide Class**

100.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

101.     Plaintiff brings this claim individually and on behalf of members of the Nationwide Class against Defendant.

102.     Plaintiff and members of the Nationwide Class conferred benefits on Defendant by purchasing the Retinol Rinse-Off Cleansers.

103.     Defendant has knowledge of such benefits.

104.     Defendant has been unjustly enriched in retaining the revenues derived from

Plaintiff's and Nationwide Class members' purchases of the Retinol Rinse-Off Cleansers. Retention of those monies under these circumstances is unjust and inequitable because Defendant deceptively advertises and sells Retinol Rinse-Off Cleansers that purport to deliver the commonly understood dermatologic benefits of retinol, but do not and cannot deliver those benefits.

105.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of the benefits conferred.

106.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Nationwide Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

(a)    For an order certifying the Classes pursuant to Fed. R. Civ. P. 23, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Classes.

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Classes on all causes of action asserted herein;

(d)    For compensatory, statutory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    Or an order enjoining Defendant from engaging in the unlawful conduct described herein;

(f)    For pre-judgement interest on all amounts awarded; and

(g)    For an order awarding Plaintiff and the members of the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.


Dated: December 3, 2025                    Respectfully submitted,


**BURSOR & FISHER, P.A.**

By: */s/ Yitzchak Kopel*
        Yitzchak Kopel

Yitzchak Kopel
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: ykopel@bursor.com


**BLOOD HURST & O'REARDON, LLP**

Timothy G. Blood (*pro hac vice forthcoming*)
Thomas J. O'Reardon II (*pro hac vice forthcoming*)
James M. Davis (*pro hac vice forthcoming*)
501 West Broadway, Suite 1490
San Diego, CA 92101
Telephone: (619) 338-1100
Facsimile:  (619) 338-1101
Email: tblood@bholaw.com
       toreardon@bholaw.com
       jdavis@bholaw.com

*Attorneys for Plaintiff*

**EXHIBIT A**

# BLOOD HURST & O'REARDON | LLP

501 W. Broadway, Suite 1490 | San Diego, CA 92101
T | 619.338.1100  F | 619.338.1101
www.bholaw.com

Timothy G. Blood
tblood@bholaw.com

November 25, 2025

**VIA CERTIFIED MAIL (RETURN RECEIPT)**
**(RECEIPT NO. 7021 2720 0001 0088 9089)**

Fernando Fernandez, CEO
Unilever United States Inc.
111 River Street
Hoboken, NJ  07030

Re:     Dove Retinol Rinse-Off Cleansers

Dear Mr. Fernandez:

We represent Rozaliya Ripa ("Plaintiff") and all other consumers similarly situated in an action against Unilever United States Inc. ("Unilever" or "Defendant"), arising out of, *inter alia*, misrepresentations by Unilever to consumers that its Dove-brand Retinol Rinse-Off Cleansers[1] provide the advertised skincare benefits of retinol.

Plaintiff and others similarly situated purchased Unilever's Retinol Rinse-Off Cleansers unaware of the fact that defendant's representations were deceptive and not truthful. The full claims, including the facts and circumstances surrounding these claims, are detailed in the Class Action Complaint, a copy of which is attached and incorporated by reference.

Unilever's representations and omissions are false and misleading and constitute unfair methods of competition and unlawful, unfair, and fraudulent acts or practices, undertaken by defendant with the intent to result in the sale of the Retinol Rinse-Off Cleansers to the consuming public.

Unilever's practices constitute violations of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* and similar state statutes. Specifically, P&G's practices violate California Civil Code § 1770(a) under, *inter alia*, the following subdivisions:

(5)     Representing that goods or services have . . .approval, characteristics, . . . uses [or] benefits . . . which they do not have . . . .

* * *

(7)     Representing that goods or services are of a particular standard, quality or grade . . . if they are of another.

* * *

---

[1]     As set forth in the enclosed Complaint, the Retinol Rinse-Off Cleansers include: "Dove Calming Moisture Serum Body Wash with renewing Retinol"; "Dove Body Love Night Recovery Body Cleanser"; and "Dove Body Love Body Polish Night Recovery."

00230150



Fernando Fernandez, CEO
Unilever United States Inc.
November 25, 2025
Page 2

    (9)    Advertising goods or services with intent not to sell them as advertised.

* * *

    (16)   Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

As detailed in the enclosed Complaint, Unilever's practices also violate:

a.  California Bus. and Prof. Code § 17200, *et seq.*,

b.  New York Gen. Bus. Law §§ 349 and 350,

c.  Connecticut Conn. Gen. Stat. §§ 42-110a through 42-110q

d.  Delaware Del. Code Ann. Title 6, §§ 2511 through 2527, §§ 2580 through 2584

e.  District of Columbia D.C. Code §§ 28-3901 through 3913

f.  Florida Fla. Stat. §§ 501.201 through 501.213

g.  Hawaii Haw. Rev. Stat. §§ 480-1 through 480-24

h.  Idaho Code Ann. §§ 48-601 through 48-619

i.  Illinois 815 Ill. Comp. Stat. 505/1 through 505/12

j.  Kansas Kan. Stat. Ann. §§ 50-623 through 50-640, and §§ 50-675(a) through 50-679(a)

k.  Kentucky Ky. Rev. Stat. Ann. §§ 367.110 through 367.990

l.  Louisiana La. Rev. Stat. Ann. §§ 51:1401 through 51:1420

m.  Maine Me. Rev. Stat. Ann. tit. 5, §§ 205A through 214

n.  Massachusetts Mass. Gen. Laws Ann. Ch. 93A, §§ 1 through 11

o.  Missouri Mo. Rev. Stat. §§ 407.010 through 407.307

p.  Montana Mont. Code Ann. §§ 30-14-101 through 30-14-157

q.  Nebraska Neb. Rev. Stat. §§ 59-1601 through 59-1623

r.  New Hampshire N.H. Rev. Stat. Ann. §§ 358-A:1 through 358-A:13

s.  New Jersey N.J. Stat. Ann. §§ 56:8-1 through 56:8-91

t.  Ohio Rev. Code Ann. §§ 1345.01 through 1345.13

u.  Oregon Or. Rev. Stat. §§ 646.605 through 646.656

v.  Rhode Island R.I. Gen. Laws §§ 6-13.1-1 through 6-13.1-27

w.  South Carolina S.C. Code Ann. §§ 39-5-10 through 39-5-160

**BLOOD HURST & O'REARDON** | LLP

Fernando Fernandez, CEO
Unilever United States Inc.
November 25, 2025
Page 3

    x.  Vermont Vt. Stat. Ann. tit. 9, §§ 2451 through 2480(g)

    y.  Washington Wash. Rev. Code §§ 19.86.010 through 19.86.920

    z.  West Virginia W. Va. Code §§ 46A-6-101 through 46A-6-110

    aa. Wisconsin Wis. Stat. § 100.18, §§ 100.20 through 100.264

    While the enclosed Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code § 1782 and other states' applicable laws, we hereby demand on behalf of our clients and all others similarly situated that Unilever immediately correct and rectify these violations by ceasing the misleading marketing campaign and ceasing dissemination of false and misleading information as described in the enclosed Complaint. In addition, Unilever must offer to refund the purchase price to all consumer purchasers of the Retinol Rinse-Off Cleansers, plus provide reimbursement for interest, costs, and fees.

    We await your response.

Sincerely,

TIMOTHY G. BLOOD

TGB:jk

Enclosure

00230150