UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————— x

ROZALIYA RIPA, individually and on behalf of all
others similarly situated,

Plaintiff,

-against-                                                      25-cv-10028 (CM)

UNILEVER UNITED STATES INC.,

Defendant.

————————————————————————— x

**DECISION AND ORDER GRANTING
UNILEVER'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

McMahon, J.:

Plaintiff Rozaliya Ripa brings this putative class action against Defendant Unilever United

States Inc. ("Unilever"), alleging violations of Sections 349 and 350 of New York's General

Business Law; violations of the consumer protection statutes of California, Connecticut, Delaware,

District of Columbia, Florida, Hawaii, Idaho, Illinois, Kansas, Kentucky, Louisiana, Maine,

Massachusetts, Missouri, Montana, Nebraska, New Hampshire, New Jersey, Ohio, Oregon, Rhode

Island, South Carolina, Vermont, Washington, West Virginia, and Wisconsin; and unjust

enrichment. Plaintiff alleges that Unilever's marketing of three skincare products as "retinol"

products is false and misleading because the products do not deliver skincare benefits commonly

associated with retinol, such as wrinkle reduction and dark spot elimination.

Before the Court is Unilever's motion to dismiss Plaintiff's Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6).

For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint. *See* Dkt. No. 1. On a motion to dismiss, the court "accept[s] as true the factual allegations contained in the complaint and draw[s] all inferences in plaintiff's favor." *Glob. Network Commc'ns Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006) (citing *Allair Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)).

### I.    The Products

Defendant Unilever United States Inc. ("Unilever") is a Delaware limited liability company that sells a wide range of consumer goods, including food and beverages, personal care products, and beauty and wellness items, through household brands such as Dove, Hellmann's, and Vaseline.

Unilever manufactures, advertises, markets, distributes, and sells the three products at issue in this lawsuit: Dove Body Love Night Recovery Body Cleanser (the "Body Cleanser"), Dove Calming Moisture Body Wash (the "Body Wash"), and Dove Body Love Night Recovery Body Polish (the "Body Polish") (collectively, the "Products"). The Products are sold through various third-party retailers, including Rite Aid, CVS, Walmart, and Amazon, among others.

Unilever prominently labels each Product with the word "Retinol" and lists retinol as one of the ingredients in the products.

The words "Retinol Serum" appear on the front label of the Body Cleanser packaging. The back of the packaging states: "Works with skin while you sleep to boost skin's resilience for a renewed skin moisture barrier." Near the words "Retinol Serum" the label says "encourages production of skin's natural moisturizers."

2

*The Retinol Body Cleanser*

 

The Body Wash also features "retinol" on the front of its packaging. On the back, the packaging states: "Wish you could wake up to renewed skin? Our advanced formula with a blend of active MicroMoisture + retinol and botanical oils works with skin while you sleep to boost resilience for a strengthened and renewed moisture barrier." Consistent with the product packaging, Unilever's webpage for the Body Wash states: "Renew skin overnight with our body wash with 3% renewing serum with retinol, chamomile and calming warm oat milk aroma." The web page also says that retinol is "known to accelerate skin surface turnover."

3

*The Retinol Body Wash*

 

The Body Polish prominently features the words "Retinol Serum" on the front of the packaging. On the back, and under "night recovery," it states: "Smooths and refines dry, worn-down skin and infuses moisture for beautifully reset skin in the morning." The directions for use state: "In the shower, massage a generous amount on skin focusing on dry, worn-down skin. Leave on for one minute to infuse moisture. Follow with the Dove Body Love Body Cleanser to lock in moisture."

*The Retinol Body Polish*





The word "wrinkle" – or any mention of "reducing wrinkles" or "eliminates wrinkles" – does not appear on any of the Products or in any advertising mentioned in the Complaint. Nor does the packaging or advertising for any of the Products mention "aging," "anti-aging," or "age spots."

5

## II.    Retinol

Retinol is a type of retinoid. Retinoids are a class of chemical compounds that are derivatives of Vitamin A. Complaint ¶ 11. In the human body, retinol is the primary form of Vitamin A that circulates in the bloodstream; retinoic acid is its most biologically active form. Retinol is stored in the liver as retinyl esters, which can be converted back to retinol and released into the bloodstream as needed. *Id.* ¶ 12.

The synthetic version of biologically active retinoic acid is known as tretinoin, which is available only by prescription. *Id.* ¶ 13. Tretinoin binds to and activates specific retinoic acid (RAR) and retinoid-X (RXR) receptors inside skin cells. *Id.* This process can influence gene expression, protein production, and skin cell development. *Id.* Evidence shows that tretinoin influences collagen synthesis, fibroblast activity, and the inhibition of matrix metalloproteinases – enzymes that break down proteins like collagen found in the spaces between cells. *Id.* ¶ 14. Tretinoin is FDA-approved under various brand names, both for treating facial acne and as an anti-aging treatment.

Retinol derivatives, which are not classified as drugs, are commonly found in over the counter ("OTC") products, which are sold as creams, gels, lotions, ointments, and serums. *Id.* ¶ 15. Skincare companies selling OTC retinol products have long claimed that retinol has anti-aging effects and improves skin texture, combats hyperpigmentation, reduces dryness, and lessens or eliminates fine lines in the skin. *Id.*

Unlike tretinoin, retinols (which are twenty times less potent than tretinoin) require a series of complex enzymatic steps in the body, including oxidation and hydroxylation, to convert into active retinoic acid. *Id.* ¶ 16. This conversion process, essential for its efficacy, requires time; RAR and RXR nuclear receptors, which are necessary for retinoic acid to work, are found primarily in

keratinocytes – the living skin cells located in the deeper layers of the epidermis. *Id.* ¶ 17. The outermost layer of skin that products like body wash contact, known as the stratum corneum, is composed of dead skin cells called corneocytes. *Id.* Corneocytes lack nuclei and therefore do not have the receptors needed for retinoic acid to bind or function. *Id.* This means that for retinol in a body or face wash to be effective, it must be in contact with the skin long enough to penetrate beyond the stratum corneum to reach the living keratinocyte cells. *Id.* Only then can the retinoic acid bind to the RAR and RXR nuclear receptors in the cell nucleus to regulate gene expression and produce skin-improving effects. *Id.*

To be effective, retinol application must be frequently repeated, and retinol must be left on the skin. *Id.* ¶ 32. Even when retinol is properly applied and left on the skin for 24 hours, however, very little retinol permeates the stratum corneum to reach keratinocytes. *Id.* Retinol's effectiveness is further limited by its instability; exposure to heat, light, and trace metals accelerates its decomposition, and its efficacy can only be preserved under strict conditions: controlled atmospheric conditions, storage in aluminum tubes, and an environment below 68 degrees Fahrenheit. *Id.* ¶ 19.

## III.    Procedural History

Plaintiff filed her complaint, individually and on behalf of all others similarly situated, on December 3, 2025. Unilever is the only Defendant. *See* Dkt. No. 1 ("Complaint"). She seeks certification of a nationwide class, a New York class, and a multi-state class under Federal Rule of Civil Procedure 23.

The Complaint alleges that Unilever's Products cannot possibly provide the skincare benefits that she claims are commonly associated with retinol – reducing the appearance of fine lines and wrinkles; fading dark spots on skin; preventing premature aging; and generally maintaining healthy skin – because the Products are washed off the skin with water soon after

application, thereby preventing any meaningful interaction with the skin. Plaintiff also alleges that the Products are improperly packaged, stored, and shipped, thereby compromising the stability of any retinol they may contain. The Complaint does not allege that that the Products do not contain retinol or that they do not deliver the generalized skincare benefits expressly advertised on the packaging – a renewed skin moisture barrier, production of skin's natural moisturizers, and smoothing and refining of dry, worn-down skin. *See* Complaint ¶¶ 22, 24, 27.

On January 28, 2026, Unilever filed its motion to dismiss the Complaint in its entirety. Dkt. No. 24.

## LEGAL STANDARD

### I.      Dismissal Pursuant to Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted). Rather, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

### II.     Dismissal Pursuant to Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'" *Sphere Digital, LLC v. Armstrong*, 2020 WL 6064156, at *4 (S.D.N.Y. Oct. 14, 2020) (quoting *Twombly*, 550 U.S. at 555). Where a plaintiff fails to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the truth of the allegations. *Id*. at 545.

## DISCUSSION

### I.    Standing

Unilever argues that Plaintiff lacks standing both to assert claims about products she never purchased and to seek forward-looking injunctive relief.

"[S]tanding challenges brought under Rule 12(b)(6) should be analyzed as if they were properly brought as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Eshelby v. L'Oreal USA, Inc.*, 664 F. Supp. 3d 417, 423 (S.D.N.Y. 2023).

As set forth below, the Court holds that Plaintiff has standing to assert claims for the products she did not personally purchase but lacks standing to seek injunctive relief.

### a.    Products Not Purchased

Unilever contends that because Plaintiff purchased only the Body Wash, she lacks standing to assert claims on behalf of purchasers of the Body Cleanser and the Body Polish. In Unilever's view, the three Products have distinct packaging, formulations, directions for use, and descriptions. The Products are also used differently; for example, unlike the Body Wash, which is applied in the

9

shower, the Body Polish expressly instructs consumers to leave the product on the skin for one minute before rinsing.

In support of its argument that Plaintiff lacks standing to assert claims for unpurchased products, Unilever points to decisions from this District in which courts dismissed claims for products which the plaintiff did not purchase because the unpurchased products had different labels, ingredients, packaging, or advertising claims than the products actually purchased by the plaintiff.

In *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27 (2d Cir. 2014), for example, plaintiffs asserted class action claims arising from defendants' marketing of seven different cosmetic products, despite only having purchased three of them. *DiMuro*, 572 F. App'x at 29. The Second Circuit affirmed the district court's holding that the plaintiffs lacked standing to assert claims for the unpurchased products because each of the seven products had different ingredients and the advertising claims for each product were distinct. *Id*. Because unique evidence would be required to prove that that the advertising statements for each of the seven products were false and misleading, the unpurchased products did not raise a set of concerns "nearly identical" to those of the purchased products. *Id*.

Likewise, in *Hart v. BHH, LLC*, 2016 WL 2642228 (S.D.N.Y. May 5, 2016), the court found that unique evidence would be required to prove that defendants' statements regarding the products at issue were actually or false misleading because the products were "distinct and serve[d] different purposes: Pest Repellers are plugged into electric sockets and are advertised only to repel insects and mice from a home, whereas Animal Repellers are solar-powered devices mounted in gardens to repel animals such as raccoons, deer, squirrels, cats and dogs from a yard." *Hart*, 2016 WL 2642228, at *4.

10

The instant action stands in sharp contrast to cases like *DiMuro* and *Hart*. Here, the crux of Plaintiff's Complaint is the same for each Product: Unilever's Products cannot provide the expected benefits of retinol, because all three Products are rinsed off soon after application and are not properly packaged, shipped, and stored. The Products contain substantially similar advertising claims and raise "nearly identical" concerns regarding the validity of Unilever's "retinol" representations. *See Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016); *Kandel v. Dr. Dennis Gross Skincare, LLC*, 721 F. Supp. 3d 291, 309 (S.D.N.Y. 2024); *Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 551 (W.D.N.Y. 2018). Although the Products may contain slightly different ingredients, any differences are unrelated to the alleged misrepresentations at issue. *See Alongis v. Arby's Rest. Grp., Inc.*, 2025 WL 2772810, at *11 (E.D.N.Y. Sept. 29, 2025). The same proof, as opposed to entirely unique evidence, will be needed to show that Unilever's "retinol" representations are false or misleading. *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 544 (E.D.N.Y. 2017).

At the motion to dismiss stage, it is sufficient that Plaintiff's allegations involve the same misrepresentations about substantially similar products containing the same pertinent ingredient. *See Ham v. Lenovo (United States) Inc.*, 664 F. Supp. 3d 562, 577 (S.D.N.Y. 2023). Any specific "concerns regarding the [Products'] differences [could] be addressed at the class certification stage." *Hart*, 2016 WL 2642228, at *3 (quoting *Jovel v. i-Health, Inc.*, 2013 WL 5437065, at *10 (E.D.N.Y. Sept. 27, 2013)).

### b.    Injunctive Relief

Unilever next argues that, because Plaintiff fails to allege that she intends to purchase the Products in the future, she lacks standing to seek prospective injunctive relief. Here Defendant is on firmer ground.

To satisfy the requirements of standing under Article III of the Constitution, a plaintiff must establish three elements: "(1) the plaintiff must have suffered an injury in fact, i.e., an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "A plaintiff must demonstrate standing for each claim and form of relief sought." *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) (citing *Spiro v. Healthport Technologies, LLC*, 73 F. Supp. 3d 259, 270 (S.D.N.Y. 2014)). "There is no exception to demonstrating future injury when the plaintiff is pursuing a class action." *Buonasera*, 208 F. Supp. 3d at 564 (citing *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)). "[E]ach member of the class must have standing to assert her own claims against the defendant," and "For each claim asserted in a class action, there must be at least one class representative (a named plaintiff or a lead plaintiff) with standing to assert that claim." *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 331 (S.D.N.Y. 2012).

A consumer protection plaintiff seeking injunctive relief "cannot rely on a past injury alone because past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Buonasera*, 208 F. Supp. 3d at 564 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) (quotations omitted). Instead, a plaintiff must "demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).

Here, Plaintiff does not allege that she would buy the Products again in the future. She instead argues that her inability to rely in the future on Unilever's labeling constitutes a cognizable, forward-looking injury supporting injunctive relief.

This argument is not supported by Second Circuit law. Under this Circuit's precedent, a plaintiff bringing a claim under GBL Section 349 or 350 lacks standing to seek injunctive relief "absent an intent to purchase the offending product in the future." *Yee Ting Lau v. Pret A Manger (USA) Ltd.*, 2018 WL 4682014, at *2 (S.D.N.Y. Sept. 28, 2018) (quoting *Kommer v. Bayer Consumer Health*, 710 Fed. App'x 43, 44 (2d Cir. 2018)). As the Second Circuit explained in *Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020), past purchasers who have "been deceived by the product's packaging once" will not again be deceived because the "next time" those purchasers buy the product they "will be doing so with exactly the level of information that they claim they were owed from the beginning," and so cannot identify a likely harm. *Id.* at 148. That principle applies here. Because Plaintiff is now aware of the alleged misrepresentations, "there is no danger that [she] will again be deceived by them." *Elkind v. Revlon Consumer Prods. Corp.*, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015).

The cases Plaintiff cites in support of her argument have been overruled, a fact counsel failed to call to the Court's attention. *See Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440 (E.D.N.Y. 2015); *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866 (E.D.N.Y. July 18, 2013). In cases like *Belfiore*, courts allowed plaintiffs to seek injunctive relief where they were suing on behalf of future consumers, even if the plaintiffs themselves said they would not purchase the products again in the future. *See Belfiore*, 94. F. Supp. 3d at 445. *Belfiore* and its progeny relied heavily on public policy; the court explained that denying the plaintiff standing to seek injunctive relief "would denigrate the New York consumer protection statute." *Id.*

But the *Belfiore* court made clear that, at the time of its decision, the Second Circuit had "not yet directly addressed the issue of whether a plaintiff, with no claim of probable future injury, may pursue an injunction under state consumer protection statutes." *Id.* at 444. The Second Circuit has since spoken. In *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016), the Circuit held that a plaintiff who fails to allege that she intends to use the offending products in the future lacks standing to seek injunctive relief on behalf of a class because there is no likelihood that the named plaintiff would suffer future harm. *Id.* at 239. *Nicosia*, which postdates cases like *Belfiore* and *Ackerman*, is binding precedent, and its holding "trumps the public policy rationale presented in *Belfiore I.*" *Troncoso v. TGI Friday's Inc.*, 2020 WL 3051020, at *4 (S.D.N.Y. June 8, 2020). *See also Kommer v. Bayer Consumer Health*, 710 Fed. App'x 43, 44 (2d Cir. 2018). Accordingly, following *Nicosia*, district courts routinely reject the proposition that a plaintiff has standing to pursue injunctive relief for products which they do not intend to purchase again. *See Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 296 n.65 (S.D.N.Y. 2015) (cases like *Belfiore* are "irreconcilable with Article III's firm injury-in-fact requirement"); *Davis v. Hain Celestial Grp., Inc*, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) (*Belfiore* and *Ackerman* "are inconsistent with Article III and with Supreme Court and Second Circuit case law"); *Buenosera*, 208 F. Supp. 3d at 565 n.3 ("the Court declines to follow the reasoning in *Ackerman* as Second Circuit precedent dictates otherwise.").

Having failed to allege an intent to purchase the Products in the future, Plaintiff has not established a likelihood of future injury sufficient to confer standing to sue for injunctive relief. *Troncoso*, 2020 WL 3051020, at *4; *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230, at *5 (S.D.N.Y. Aug. 11, 2017), *report and recommendation adopted*, 2017 WL 3726050 (S.D.N.Y. Aug. 28, 2017). Her claim for injunctive relief is therefore dismissed. Furthermore,

14

because Plaintiff cannot plausibly allege that she will be deceived by Unilever's packaging, dismissal should be with prejudice.

## II.    New York General Business Law Claims

Plaintiff brings claims under New York General Business Law Sections 349 (prohibiting deceptive acts or practices) and 350 (prohibiting false advertising). She can bring these claims only for deceptive acts or practices that occurred within New York State. *See Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997); *Petitt v. Celebrity Cruises, Inc.*, 153 F. Supp. 2d 240, 265-66 (S.D.N.Y. 2001).

"'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)). "To successfully assert a claim under either section of the statute, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). Claims under Sections 349 and 350 are not required to meet the heightened pleading standard of Rule 9(b). *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (citing *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 239-40 (S.D.N.Y. 2020)).

There is no dispute that Unilever engaged in consumer-oriented conduct. Unilever's motion to dismiss Plaintiff's GBL claims focuses on the second and third elements. Specifically, Unilever argues that Plaintiff fails to plausibly allege a material misleading statement or that she suffered a concrete injury as a result of the allegedly deceptive act or practice.

15

Because Plaintiff does not plausibly allege that Unilever's conduct was materially misleading, her claims under GBL Sections 349 and 350 must be dismissed. And to the extent her claims are predicated on purported misrepresentations on Unilever's webpage – which she never saw – that dismissal is with prejudice.

### a.     Materially Misleading Statement

New York courts apply "an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted). To survive a motion to dismiss, a plaintiff "must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022) (citation omitted). Instead, a plaintiff must plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* (citation omitted).

In determining whether a reasonable consumer would have been misled, "context is crucial." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). Courts must "therefore consider the challenged advertisement as a whole, including disclaimers and qualifying language." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018). While the question of whether a business practice or advertisement is misleading to the reasonable consumer is typically a question of fact, it is well settled that a court may determine that an allegedly deceptive practice would not mislead a reasonable consumer as a matter of law. *See Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 278 (S.D.N.Y. 2021).

Here, Plaintiff does not allege that the Products do *not* contain retinol. Nor does she allege that any statement on the packaging is literally false. In particular, she does not allege that the

16

Products do not deliver the benefits expressly listed on their packaging, like "encourages production of skin's natural moisturizers" or "works with skin while you sleep to boost skin's resilience for a renewed skin moisture barrier." Rather, Plaintiff alleges that the Products' packaging falsely communicates to a reasonable consumer that the Products will provide benefits that, according to her, are commonly associated with retinol – reducing the appearance of fine lines and wrinkles, fading dark spots on skin, preventing premature aging of the skin, and generally maintaining healthy skin. She so alleges because of the prominent use of the word "retinol" on the label, which is reinforced by "treatment-oriented cues" such as "overnight serum" and "3% renewing serum." Dkt. No. 33 at 8.

Plaintiff alleges that the Products cannot possibly confer the benefits she expects from retinol because they are designed to be rinsed off and so cannot penetrate the skin for the period of time required to convert retinol into retinoic acid. Further, she alleges that the Products are improperly packaged in plastic containers, which are not shipped or stored at a proper temperature, all of which fails to preserve the stability of the retinol they contain. Under these conditions, Plaintiff asserts, retinol "cannot function in the manner consumers reasonably understand retinol to function," making the Products' marketing deceptive. Dkt. No. 33 at 8.

Unilever argues that Plaintiff fails to identify any false or misleading statements on the Products' packaging. It points out that nothing on the packaging expressly promises the skincare benefits that *Plaintiff* associates with retinol – the packaging contains no reference to diminution of wrinkles, fading of age spots, or any anti-aging results. As a result, Unilever contends, any inference that the Products will deliver such benefits is unjustified.

Plaintiff responds that, even if individual statements are not literally false, marketing that is likely to mislead a reasonable consumer is prohibited under New York's General Business Law.

17

For this proposition, Plaintiff cites to *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), a case in which consumers brought a putative class action against the manufacturer of Cheez-It crackers, alleging that the labels "whole grain" or "made with whole grain" would lead a reasonable consumer to believe that the grain content was predominantly whole grain. *Id.* at 635. In actuality, the crackers were made predominantly with enriched white flour, with just a small amount of whole grain flour. *Id.* The Second Circuit agreed with the plaintiffs, finding that because reasonable consumers are likely to understand that crackers are typically made predominantly of grain, the representation that a cracker is "made with whole grain" would plausibly lead a reasonable consumer to conclude that the grain ingredient was entirely, or at least predominantly, whole grain. *Id.* at 638.

Plaintiff is correct – and Unilever does not disagree – that a statement need not be literally false to be prohibited by GBL Sections 349 and 350. A reference to an ingredient can convey an implicit message even in the absence of an express promise. *See, e.g., Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 107 (S.D.N.Y. 2021). But *Mantikas* is nonetheless inapposite, because on the facts here pleaded, no reasonable consumer could believe that the Products would deliver the unadvertised benefits that Plaintiff asserts are "commonly associated" with retinol. The Complaint pleads no facts tending to show that consumers generally would believe, from reading the Products' labels, that they were purchasing a product that would deliver benefits like wrinkle-reduction or dark-spot elimination – benefits that are mentioned nowhere on the Products' packaging, and that Unilever does not claim to deliver.

Cases like *Campbell v. Whole Foods Market Group, Inc.*, 516 F. Supp. 3d 370 (S.D.N.Y. 2021) do not counsel a different result. The court in *Campbell*, relying on *Mantikas*, held that the plaintiff plausibly pleaded that the packaging of "honey graham crackers" was likely to mislead

18

reasonable consumers into thinking that the product contained more whole grain – or graham – flour than refined flour. *Id*. at 382. This was so because reasonable consumers would understand "graham" to mean "whole grain," as confirmed by dictionary entries defining "graham flour" as "whole wheat flour" *Id*. at 378. Here, unlike the plaintiff in *Campbell* – who adequately alleged that consumers would reasonably interpret "graham cracker" to mean "a slightly sweet cracker made of whole wheat flour" by citing to dictionary definitions – Plaintiff has not alleged any *facts* to show that retinol is "commonly associated" with benefits Unilever does not claim to deliver, such as wrinkle reduction or dark spot elimination.[1]

A court in California recently rejected a virtually identical theory in a case concerning skincare products containing retinol brought by the attorney who also represents Plaintiff. In *Kobus v. Procter & Gamble Co.*, 2026 WL 194742 (N.D. Cal. Jan. 26, 2026), plaintiffs identified five products, all of which "prominently displayed" on the front label in all caps the fact that they contained retinol. *Id*. at *7. Plaintiffs in *Kobus* alleged exactly what Plaintiff alleges here; that retinol is "widely understood by the consuming public" to have anti-aging properties, and none of the products at issue did or could provide such benefits, because the products were designed to be washed off. *Id*. The court found plaintiffs' allegations insufficient to state a claim under California's consumer protection statute, because it was not clear from their pleadings "how any statements, images, or other elements implied certain benefits from retinol." *Id*. Noting that the language on the packaging described only generic skincare benefits – not the benefits *plaintiffs* associated with retinol – the *Kobus* court went on to explain that, "Because these excerpts do not discuss the benefits of retinol specifically, these can only be relevant if Plaintiffs adequately allege

---

[1] Retinol is defined as "the chief and typical vitamin A $C_{20}H_{29}OH$ that is a highly unsaturated alicyclic alcohol used in various forms in medicine and nutrition." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/retinol.

that consumers associate these benefits specifically with retinol." *Id.* at *8. The *Kobus* court found that the plaintiffs had failed to do so and dismissed the Complaint. *See id.*

Here, as in *Kobus*, nothing on the Products' packaging discusses the benefits of retinol specifically, and Plaintiff pleads no factual allegations in support of the notion that consumers widely associate retinol with specific benefits like wrinkle reduction or dark spot treatment. For example, she cites no consumer studies demonstrating that members of the general public (as opposed to Plaintiff and her experienced attorney) expect to see wrinkle reduction and dark spot elimination because a product contains retinol. All Plaintiff does is allege, in purely conclusory fashion, that the general public sees the word "retinol" and thinks "anti-wrinkle" cream. That is insufficient under *Twombly* and *Iqbal.*

Plaintiff attempts to distinguish *Kobus* by arguing that the *Kobus* court "concluded that the plaintiffs had not alleged contextual cues beyond the ingredient name itself sufficient to convey retinol-related performance claims." Dkt. No. 33 at 20. She argues that the necessary "contextual clues" are present on Unilever's packaging because Unilever "does not merely list retinol; it spotlights 'RETINOL' and pairs it with treatment-oriented signals—'Retinol Serum,' '3% renewing serum,' 'Night Recovery,' and repeated overnight renewal messaging—that situate the product within the familiar retinol-treatment paradigm." *Id.*

But the situation presented here is no different than the one before the court in *Kobus*. Viewing the alleged misrepresentations in the context of the packaging as a whole, the *Kobus* court found that language like, "wake up to renewed, youthful looking skin," "replenishes skin's moisture barrier," "vibrant skin overnight," "infuses skin with concentrated moisture overnight to help stop dry skin," and "smoothing" did no more than reference generic skincare benefits – none of which was claimed to be, or appeared to be, specifically linked to retinol. *Id.* at *8. To be sure,

20

Unilever uses certain phrases on the packaging of the Products that were not considered by the *Kobus* court, such as "night recovery," "works with skin while you sleep," "3% renewing serum," and "retinol serum." In Plaintiff's view, Unilever's use of these phrases "situate[s] the product within the familiar retinol-treatment paradigm." Dkt. No. 33 at 20. But as was the case in *Kobus*, the language to which Plaintiff points does not promise that *retinol* provides these benefits or any other a consumer can expect.

For example, Plaintiff alleges that the packaging of the Body Wash claims that it will "renew" the user's skin and that its "advanced formula with a blend of active MicroMoisture + retinol and botanical oils works with your skin while you sleep to boost resilience for a strengthened and renewed moisture barrier." But the packaging simply identifies retinol as one of several ingredients and describes generalized moisturizing benefits as results to be expected from the Body Wash – not specifically from retinol. Those benefits are commonly asserted.

Plaintiff alleges that, in addition to the packaging for the Products, Unilever's webpage for the Body Wash features retinol as an ingredient, stating that it is "known to accelerate skin surface turnover" and further states: "Renew skin overnight with our body wash 3% renewing serum with retinol, chamomile and calming warm oat milk aroma." Complaint ¶ 26. However, Plaintiff does not allege that she ever saw, let alone relied on, anything that appeared on the webpage; she alleges only that she "was exposed to and saw the subject advertising message by reading the Retinol Body Wash labeling and packaging." *Id.* ¶ 9. Plaintiff therefore lacks standing to assert any claim for relief based on allegedly deceptive statements on Unilever's webpage. *See Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020) ("Plaintiffs must allege that they saw the misleading statements of which they complain before they purchased or came into possession of Defendants' [Products].").

21

Plaintiff's allegations about the Body Cleanser and Body Polish fare no better than her allegations concerning the Body Wash. For instance, Plaintiff asserts that the back of the Body Cleanser packaging lists the words "retinol serum" in close proximity to "encourages production of skin's natural moisturizers." Complaint ¶ 22. But Plaintiff's reading of the packaging improperly isolates the reference to retinol from the surrounding context. The sentence at issue states, in its entirety, that "Our unique formula with retinol serum + botanical oils encourages production of skin's natural moisturizers, nourishes and calms dry skin." *See Fink*, 714 F.3d at 742 ("A plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss or, indeed, to escape admonishment."). Viewing the allegedly misleading statements in the context of the overall packaging, the Body Cleanser label indicates that a formula that includes retinol and botanical oils helps with dry skin. As with the Body Polish packaging, it does not promise any anti-aging benefits at all, and it does not ascribe any benefit solely to retinol. Nor does Plaintiff allege any facts from which one could infer that a reasonable consumer would think that a reference to retinol in serum form, as opposed to in any other form, was designed to deliver such benefits.

Plaintiff's GBL claims thus fail for the same reasons the claims were dismissed under an analogous California law in *Kobus*. Her argument boils down to this: (1) identifying retinol as one ingredient in a Product, plus (2) representing that the Product (not the retinol) has moisturizing or skin reinvigorating properties, (3) conveys to the average New York consumer a promise that use of the Products will deliver "the skincare benefits associated with retinol," Complaint ¶ 30, which benefits include diminution of wrinkles, fading of age spots, and prevention of premature aging, Complaint ¶ 1, none of which is mentioned, or even hinted at, on any of the packaging. The

22

conclusion she pleads is based on an inferential leap that is not supported by the facts pleaded in the Complaint.

Because Plaintiff has not plausibly alleged that a reasonable consumer would associate retinol with the skincare benefits that Plaintiff asserts are generally associated with that product – including wrinkle reduction and dark spot elimination – the Products do not "plausibly signal to reasonable consumers that the retinol in these products is present in a form and used under conditions capable of delivering recognized retinol benefits." Dkt. No. 33 at 17. That being so, Plaintiff has not adequately alleged that the representations at issue are "likely to mislead a reasonable consumer acting reasonably under the circumstances," let alone "a significant portion of the general consuming public." *Dwyer*, 598 F. Supp. 3d at 149.

To the extent Plaintiff argues that *Kobus* has no persuasive force because it applies Ninth Circuit law rather than Second Circuit law, Dkt. No. 33 at 20, the Court is not persuaded. Both New York and California consumer statutes apply the same "reasonable consumer" standard; as a result, courts from both states frequently rely on cases decided in the other. *See Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *14 n.22 (S.D.N.Y. Aug. 12, 2016) (collecting cases); *Fink*, 714 F.3d at 741; *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *14 (E.D.N.Y. Sept. 22, 2015). "[T]he weight of authority seems to suggest that California's 'reasonable consumer' inquiry can properly inform New York's." *Kacocha*, 2016 WL 4367991, at *14 n.22. Indeed, Plaintiff herself alleges that New York and California have "materially similar" consumer protection statutes. *See* Complaint ¶ 5. Accordingly, I see no reason why the court's decision in *Kobus* lacks persuasive force.

Counts I, II, III, and IV, which assert claims under Sections 349 and 350 of New York's General Business Law, are dismissed.

23

It is not necessary for me to reach, and I do not address, Unilever's alternative argument that Plaintiff has failed to allege that she suffered any concrete injury. *See Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 197 (E.D.N.Y. 2018); *Kearney v. Cavalry Portfolio Servs., LLC*, 2014 WL 3778746, at *10 (E.D.N.Y. July 31, 2014).

### III.    Other States' Consumer Protection Statutes

Plaintiff also seeks relief on behalf of a "Multi-State Consumer Protection Class," defined as "All persons who purchased one or more [Products] in New York, California, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Missouri, Montana, Nebraska, New Hampshire, New Jersey, Ohio, Oregon, Rhode Island, South Carolina, Vermont, Washington, West Virginia, and Wisconsin, and all other states with materially similar statutes." Complaint ¶ 5. Plaintiff alleges that Unilever's conduct violates the consumer protection statutes of each of those states. *See id.* ¶ 46.

As Plaintiff acknowledges in her Complaint, the other states' consumer protection statutes are substantively similar to GBL Sections 349 and 350. Because Plaintiff fails to state a claim under GBL Sections 349 and 350, her claims alleging violations of other states' consumer protection statutes must also be dismissed. *See Indiviglio v. B&G Foods, Inc.*, 2023 WL 9022866, at *4 (S.D.N.Y. Dec. 29, 2023).

### IV.    Unjust enrichment

Unilever next argues that Plaintiff's unjust enrichment claim fails because it is duplicative of her consumer protection claims.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 129 (2d Cir. 2002). Unjust

24

enrichment is an "equitable remedy" that "prevents one party from retaining, at the expense of another, a benefit to which he is not entitled." *United States v. Bedford Associates*, 713 F.2d 895, 901 (2d Cir. 1983). It is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Mahoney v. Endo Health Sols., Inc.*, WL 3951185, at *11 (S.D.N.Y. July 20, 2016) (quoting *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012)). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello*, 18 N.Y.3d at 790. This is consistent with the well-recognized principle that equitable remedies are unavailable where a plaintiff has an adequate remedy at law. *See Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81 (2008).

Plaintiff contends that her unjust enrichment claim is not duplicative of her consumer protection claims, "Because the elements of unjust enrichment are distinct from those of Plaintiff's other claims." Dkt. No. 33 at 31.

The Court disagrees. The factual allegations in Plaintiff's Complaint demonstrate that her unjust enrichment claim is nothing more than a repackaging of her consumer protection claims. In support of her unjust enrichment claim, Plaintiff alleges that Unilever "deceptively advertises and sells [the Products] that purport to deliver the commonly understood dermatologic benefits of retinol, but do not and cannot deliver those benefits." Complaint ¶ 104. Her unjust enrichment claim is based on the same alleged misrepresentation about "retinol;" it "relies on the same factual allegations and the same theory of liability" as her consumer protection claims. *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 474 (S.D.N.Y. 2020). Accordingly, as with her consumer protection claims, Plaintiff's unjust enrichment claim must fail if she cannot show that the Products contained a materially misleading representation. *Cf. McCracken v. Verisma Sys., Inc.*, 2017 WL

2080279, at *8 (W.D.N.Y. May 15, 2017). It is for this reason that "courts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims" in similar cases. *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) (collecting cases).

Unilever's motion to dismiss Plaintiff's unjust enrichment claim is granted.

## V.      Leave to Amend

In the conclusion of her opposition to Unilever's motion to dismiss, Plaintiff requests leave to amend her Complaint should the Court grant Unilever's motion. Dkt. No. 33 at 32.

"[L]eave [to amend] shall be freely given where justice so requires." Fed. R. Civ. P. 15(a). The case remains at an early stage; discovery has not yet commenced. Plaintiff has not been dilatory in seeking leave to amend, and Unilever does not assert that it would be unduly prejudiced from the filing of an amended complaint.

However, Plaintiff's "motion" for leave to amend does not comply with the requirements set forth in Local Rule 15.1.[2] Although Plaintiff's failure to comply with Local Rule 15.1 is not itself fatal nor dispositive where no undue prejudice would result, she must "at least provide some factual detail or evidence as to the proposed amendment." *Cooper v. Trs. of Coll. of Holy Cross*, 2014 WL 2738545, at *10 (S.D.N.Y. June 17, 2014). This is necessary "so that both the Court and opposing parties can understand the exact changes sought." *Zito v. Leasecomm Corp.*, 2004 WL 2211650, at *25 (S.D.N.Y. Sept. 30, 2004) (citation omitted). Denial of leave to amend is therefore proper where, as here, a plaintiff seeks leave to amend "only in the final sentence of her opposition

---

[2] Local Rule 15.1(a) requires that a motion to amend must "include as an exhibit (1) a clean copy of the proposed amended or supplemental pleading; and (2) a version of the proposed pleading that shows—through redlining, underlining, strikeouts, or other similar typographic method—all differences from the pleading that it is intended to amend or supplement."

to the motion to dismiss" and fails to offer any new factual allegations she would make if granted leave to amend. *Metz v. U.S. Life Ins. Co. in City of New York*, 662 F.3d 600, 603 (2d Cir. 2011); *Powell v. Ocwen Loan Servicing, LLC*, 840 F. App'x 610, 613–14 (2d Cir. 2020).

Plaintiff has provided no indication of how an amended complaint would address the issues raised in Unilever's motion to dismiss. Because Plaintiff has not provided the Court with a proposed amended pleading, it would be premature to grant her the chance to amend her pleading. *See Smith v. Planas*, 151 F.R.D. 547, 550 (S.D.N.Y. 1993).

Plaintiff's motion for leave to amend is therefore DENIED without prejudice to the refiling of a proper motion, accompanied by Plaintiff's proposed amended pleading and a statement explaining how the amendments would address the deficiencies outlined above, within thirty days of this Order. To the extent that the Court has dismissed Plaintiff's claim for injunctive relief for deceptive website advertising with prejudice, leave to replead is not granted because, for the reasons articulated above, amendment would be futile.

## CONCLUSION

For the foregoing reasons, Unilever's motion to dismiss the Complaint is GRANTED.

The Clerk of Court is respectfully requested to remove the motion at Dkt. No. 24 from the Court's list of open motions.

This constitutes the decision and order of the Court. It is a written decision.

Dated: March 23, 2026

U.S.D.J.

BY ECF TO ALL COUNSEL